■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN COLON, Appellant. [763 NYS2d 850] —Cardona, P.J. Appeal from a judgment of the County Court of Schenectady

County (Giardino, J.), rendered February 16, 2000, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree.

On December 9, 1998, Schenectady Police Investigator Lincoln Grimm observed defendant sell a quantity of heroin to James Williams, a confidential police informant, during a prearranged meeting at Williams's apartment in the City of Schenectady, Schenectady County. Defendant was indicted for criminal possession of a controlled substance in the fifth degree, criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. Following a jury trial, defendant was convicted of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. Thereafter, he was sentenced to concurrent prison terms of $8^{1}/_{3}$ to 25 years, and this appeal ensued.

Defendant argues that County Court erred by denying his pretrial motion for a *Wade* hearing. "[T]he purpose and function of the *Wade* hearing is to determine whether a police-arranged pretrial identification procedure * * * was unduly suggestive" (*People v Chipp*, 75 NY2d 327, 337 [1990], *cert denied* 498 US 833 [1990]). Here, the People contend that a *Wade* hearing was unnecessary because Williams knew defendant and, therefore, there was no danger that his in-court identification was tainted by police suggestiveness. Whether this " 'confirmatory identification' exception" to the CPL article 710 notice and hearing requirements is applicable "depends on the extent of the prior relationship" between the witness and the defendant, "which is necessarily a question of degree" (*People v Rodriguez*, 79 NY2d 445, 449-450 [1992]). To explore the degree of familiarity between Williams and defendant, County Court conducted a hearing (*see id.* at 451) and concluded, as a matter of law, that their relationship was sufficiently familiar that, in essence, there was no possibility that Williams could have misidentified defendant.

Here, Grimm testified that he had used Williams on 15 to 20 prior occasions which resulted in numerous arrests. Grimm related that prior to the subject transaction, Williams gave him defendant's address and his license plate, pager and cell phone numbers. He indicated that Williams told him that he could call defendant and arrange a delivery of heroin to his house by defendant which was done on previous occasions. Grimm drove to the address given for defendant, observed the car, ran the license plate and confirmed that it was registered to defendant.

Additionally, Williams told Grimm that he and defendant lived a few blocks apart and he often saw him in the neighborhood. Under all the circumstances, we find that Williams knew defendant "so well as to be impervious to police suggestion" (*People v Rodriguez, supra* at 452) and conclude that County Court properly denied defendant's motion for a *Wade* hearing.

Next, defendant challenges County Court's refusal to require the People to articulate a reason for exercising a peremptory challenge striking the only African American from the venire. The discriminatory use of peremptory challenges violates the Equal Protection Clauses of both the United States and New York State Constitutions (*see* US Const 14th Amend; NY Const, art I, § 11; *Batson v Kentucky*, 476 US 79 [1986]; *People v Bolling*, 79 NY2d 317, 320 [1992]; *People v Kern*, 75 NY2d 638, 649 [1990], *cert denied* 498 US 824 [1990]). To establish a prima facie case of such discrimination, a defendant must show: "(1) that he or she is a member of a cognizable racial group, (2) that the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) facts and other relevant circumstances sufficient to raise an inference that the prosecutor used the challenges to exclude people because of their race" (*People v Jenkins*, 75 NY2d 550, 555-556 [1990]). (*See Batson v Kentucky, supra* at 96-98; *People v Scott*, 70 NY2d 420, 423 [1987].)

Defendant satisfied the first two requirements. However, although "a prima facie case may be made based on the peremptory challenge of a single juror that gives rise to an inference of discrimination" (*People v Smocum*, 99 NY2d 418, 422 [2003]), here, defendant failed to articulate "facts and other relevant circumstances sufficient to raise an inference that the prosecutor used the challenge[ ] to exclude [the prospective juror] because of [his] race" (*People v Jenkins, supra* at 555). Without more, the mere exercise of the peremptory challenge was insufficient to raise an inference of discrimination requiring the People to come forward with a race-neutral explanation (*see People v Childress*, 81 NY2d 263, 267-268 [1993]).

Defendant also disputes the propriety of County Court's *Sandoval* ruling to the extent that it permitted the People to inquire into his guilty plea in federal court for distributing heroin in Schenectady following the commission of the crimes charged in the indictment. Defendant argues that since the federal offense was so similar to the instant crimes, the potential for prejudice outweighed its probative worth on the issue of his credibility. Inasmuch as the federal conviction revealed defendant's willingness or disposition to place his

interests above those of society, it was relevant on the issue of his credibility despite its similarity to the pending charges (*see People v Hayes*, 97 NY2d 203, 208 [2002]; *People v Quiller*, 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]). Under the particular circumstances herein, we do not find that County Court abused its discretion in making this ruling.

Next, defendant contends that he was deprived of his right to a fair trial because the prosecutor became an unsworn witness by "suggest[ing] the existence of facts not in evidence" (*People v Paperno*, 54 NY2d 294, 301 [1981]) when she asked Jorge Lopez, a prosecution witness, about statements he made to her during a conversation in her office prior to trial. Although this issue was not preserved for appellate review by a timely objection to the line of questioning, nevertheless, we find this conduct did not deprive defendant of a fair trial. In his direct testimony, Lopez placed another individual at the scene of the crime in direct contradiction to his prior sworn written statement to the police which indicated that defendant was at the scene. Inasmuch as this testimony affirmatively damaged the People's case on the material issue of identification, it was permissible for the prosecutor, having already secured a hostile witness declaration from the court, to impeach his credibility by reference to the prior inconsistent sworn statement (*see* CPL 60.35 [1]; Prince, Richardson on Evidence § 6-423, at 431 [Farrell 11th ed]). Although the prosecutor's use of defendant's unsworn oral statements made during the office conversation violated CPL 60.35 (1), they were no different in substance from the sworn written statement which, as noted above, was properly used to impeach him. Therefore, we find the error harmless (*see People v Shuler*, 238 AD2d 528, 529 [1997], *lv denied* 90 NY2d 910 [1997]; *People v Broomfield*, 163 AD2d 403 [1990], *lv denied* 76 NY2d 891 [1990]).

Defendant also argues that he was deprived of a fair trial by the prosecutor's remark during her opening statement, "this time he got caught," and testimony elicited from Williams that he got in touch with Grimm to arrange a sale because he "knew an individual that just sells weight, not bags." Defendant contends that these references placed before the jury his commission of other uncharged drug offenses in violation of County Court's *Molineux* ruling. That ruling prohibited reference to any uncharged crimes, including defendant's guilty plea to the federal charge, unless he opened the door through trial testimony. Based upon County Court's prompt curative instructions in each instance and the other evidence of defendant's guilt, we find that defendant was not so prejudiced as to war-

rant a reversal of his convictions (*see People v Johnson*, 273 AD2d 495, 498 [2000], *lv denied* 95 NY2d 854 [2000]; *People v Bradshaw*, 263 AD2d 767, 768 [1999], *lv denied* 94 NY2d 820 [1999]).

We have considered defendant's remaining arguments and find that they lack merit.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.